## Fordson Coal Company v. Burke.

(Decided May 10, 1927.)

### Appeal from Pike Circuit Court.

1. Master and Servant.—Relation of dependency existing at the time of employee's death is to be determined in the light of prior events and is not to be controlled by an unusual temporary situation, under the Workmen's Compensation Act (Ky. Stats., sections 4893, 4894), providing to whom workmen's compensation is payable for death.

2. Master and Servant.—In proceeding under Workmen's Compensation Act (Ky. Stats., sections 4880-4987) by mother and two infant brothers of deceased, evidence held sufficient to support finding that claimants were total dependents and entitled to maximum

award, though before deceased's employment they had worked in a hotel for subsistence.

2. Witnesses.—In proceeding under the Workmen's Compensation Act (Ky. Stats., sections 4880-4987) by mother and two infant brothers of deceased as dependents, the mother may properly testify as to deceased's contributions to the brothers' support.

HARMAN, FRANCIS & HOBSON for appellant.

J. C. CANTRELL and W. SCOTT WHITT for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

On September 30, 1924, James Burke lost his life by an accidental injury arising out of his employment and while engaged as a laborer for the Fordson Coal Company. At the time both employer and employee had accepted the provisions of the Workmen's Compensation Act (Ky. Stats., section 4880-4987). Subsequently, thereto, his mother and two infant brothers filed claim before the Workmen's Compensation Board for compensation under the act.

On proof heard the board found that the claimants were total dependents and awarded them the maximum compensation of $12.00 per week for 335 weeks. On appeal to the circuit court, the award was affirmed. From that judgment the employer appeals. Appellant urges two grounds for reversal: (1) That under the uncontradicted facts the board erred in finding that the claimants were total dependents of deceased. (2) The finding was based upon incompetent evidence.

1. The facts show, James Burke was approaching his majority at the time of his death. Some 5 years before, his mother, Mrs. Permelia Burke, was divorced from her husband in the state of Arkansas. Thereafter he contributed nothing further to the support of her or her children. Her family consisted of the deceased, James, and his two younger brothers, Jewel and Wylie, now aged 14 and 12, respectively. By their united efforts they acquired a small home. In August, 1923, James enlisted in the United States service as a marine, but in a short time thereafter his mother procured his release. In May, 1924, they sold their property in Arkansas, and moved first to Charleston and later to Williamson, W. Va., all their means being expended by the time of their

arrival.   The family were in destitute circumstances, and Mrs. Burke found employment in a hotel for herself, receiving $7 per week and her board.   For a time the younger children worked at the same place for their board.   She continued at this work for 2½ months, when she went to work at a laundry at $10 per week.   The coal industry was dull, and James had difficulty in finding employment.   He worked for a time at a hotel and later for different mining companies under an assumed name, no reason being disclosed for the change of name.   About July 24th he procured employment with appellant and worked for it steadily until his death.   While working in Kentucky he appears to have spent his week ends at Williamson with his mother, though for two or three weeks he occupied an apartment with a mistress, and there is evidence that he was otherwise improvident and wasteful.   However, he assisted his mother, and during the last 2½ months preceding his death earned the sum of $428.21, and actually contributed the sum of about $90 per month to the support of his mother and younger brothers.   It further appears that since his death the claimants have subsisted largely on donations made to them by charitable organizations of the city of Williamson.   From these facts it is earnestly insisted that Mrs. Burke was a wage-earner and contributed in part to the support of her family; that James was profligate, was wasting his means in riotous living, and, as a matter of law, it should be held that the claimants were not wholly dependent upon him, within the meaning of the statute, but that, on the contrary, they should be listed as partial dependents and be awarded only a pro rata of the maximum amount permitted by statute.

Section 4893, Ky. Statutes, provides:

"(2)   If there are one or more wholly dependent persons, sixty-five per cent. of the average weekly earnings of the deceased employee, but not to exceed twelve dollars ($12.00) nor less than five dollars ($5.00) per week shall be payable, all such payments to be made for the period between the date of death and 335 weeks after the date of accident to the employee, or until the intervening termination of dependency, but in no case to exceed the maximum sum of four thousand dollars ($4,000.00).

"(3)   If there are partly dependent persons the payments shall be such part of what would be pay-

able for total dependency as the partial dependency existing at the time of the accident to the employe may be proportionate to total dependency, all such payments to be made for the period between the date of death and 335 weeks after the date of the accident to the deceased employee, or until the intervening termination of dependency, but in no case to exceed in the aggregate of compensation on account of such death the maximum sum of four thousand dollars ($4,000.00).

"Partial dependency shall be determined by the proportion of the earnings of the employee which have been contributed to such partial dependent during one year next preceding the date of injury; if the relation of partial dependency shall not have existed for one year next preceding the date of injury, the board shall consider all the facts and circumstances and fix such proportion as may be fair and reasonable thereunder."

In defining dependency, section 4894, after referring specifically to the surviving spouse and children of deceased, continues:

"In all other cases the relation of dependency in whole or in part shall be determined in accordance with the facts of each case existing at the time of the accident, but no person shall be considered a dependent in any degree unless he be living in the household of the employee at the time of the accident, or unless such person bears to the employee the relation of father, mother, husband or wife, father-in-law or mother-in-law, grandfather or grandmother, child or grandchild, or brother or sister of the whole or half blood."

The relation of "the relation of . . . dependency" is to "be determined in accordance with the facts of each case existing at the time of the accident." But in estimating the extent of partial dependency the proportion of earnings that the employee had contributed to the dependent for one year preceding the injury is to be considered, and it further appears that the facts and circumstances may be such that partial dependents are entitled to the maximum amount authorized to be awarded total dependents, or $4,000.

Construing these provisions together, it is manifest that the Legislature intended for the relation of dependency existing at the time of the accident to be determined in the light of prior events and not to be controlled by an unusual temporary situation occasioned by fortuitous circumstances.

The mother and her three sons lived together in Arkansas. Apparently, James was the breadwinner. They arrived in West Virginia without funds. In their destitution the mother found employment at $7 per week and her board—later at $10 per week without board. In neither case, was there more than enough for *her* subsistence. She also for a time found work for the small boys in the hotel where they earned their board. The family circle was thus broken, whether temporarily or permanently being a matter of conjecture. James was young and fell into bad habits, and perhaps wasted a large part of his earnings, but he was capable and industrious, and when afforded the opportunity steadily earned high wages. Also, he recognized that his mother and brothers were dependent upon him. Whatever may have been his weakness in other respects, in a financial way he was liberally loyal to those dependents, paying to his mother $90 per month for their support during the 2½ months intervening between securing steady employment and his death. If the mother be regarded in the light of a wage-earner, we have seen that her wages were barely sufficient for her own support, leaving the children wholly dependent upon James. Vice versa, her earnings were not more than sufficient for the support of the children, and if so used this left her totally dependent upon James. Usually, the breadwinner for the family makes his contribution to or for the family, and participates in the benefits arising therefrom, but in this case the dependents alone shared in the contributions, and the maximum of $12 per week permitted by the statute and allowed by the board is only 55 per cent. of the amount he was thus contributing, so that the equities are certainly in favor of the claimants. Perhaps they could have been allowed that much as partial dependents, but we will not pass on that question as there were facts and circumstances upon which the board could base a finding that some of them were total dependents, and we cannot, as a matter of law, say they were not.

It is urged that Mrs. Burke should not have been permitted to testify for herself as to James' contributions. It must not be overlooked that the children were also claimants, and the circumstances might be such that she could testify for them, though not for herself. However, in this case it is not necessary to determine whether the interest of the several claimants were joint or several, because the same proof as to contributions was made by other witnesses.

Wherefore the judgment is affirmed.