## Black Mountain Corporation v. Higgins et al.

(Decided October 23, 1928.)

### Appeal from Harlan Circuit Court.

1. Master and Servant.—In absence of fraud, findings of fact of Compensation Board will not be set aside on appeal if there is any competent evidence to sustain them.

2. Master and Servant.—That surviving wife of employee, killed while at work in mine, had three or four days before husband's death gone to sister's home following a petty quarrel, the evidence showing husband had seen her nearly every day during her absence from home, and that during such time she drew scrip on mining company employing her husband, held not to constitute an abandonment depriving her of right of compensation.

3. Master and Servant.—Action of electrical worker in mine in operating motor while moving welding apparatus so as to cause smaller cars being pushed ahead to leave the track while passing a switch and to knock out some props, precipitating the roof of the mine on worker and causing his death, held not to constitute "willful misconduct" within Ky. Stats., sec. 4882, preventing recovery of compensation by worker's dependent.

4. Master and Servant.—For an employee to be guilty of "willful misconduct" within Ky. Stats., sec. 4882, preventing recovery of compensation, employee's misconduct should involve an intentional, deliberate action, with a reckless disregard of conse-

quences, either to himself or to another, something less than voluntary self-infliction of injury, but greater than gross negligence or wanton carelessness.

5.  Master and Servant.—Evidence being conflicting whether electrical worker in mine, in operating motor at excessive speed, causing cars motor was pushing to jump the track and precipitate the roof upon worker, causing his death, was violating any rule of the company, 15 per·cent. decrease in amount of compensation awarded to beneficiary under Ky. Stats., sec. 4910, was not authorized.

6.  Master· and Servant.—Workmen's Compensation Act (Ky. Stats., secs. 4880-4987) must be liberally construed.

LEE & SNYDER for appellant.

J.. J. TYE for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

The appellant, Black Mountain Corporation, and its employee, Ben Higgins, both accepted the provisions of the Workmen's Compensation Act. Ky. Stats., secs. 4880-4987. The latter was killed in the former's mine on June 16, 1926, under circumstances which will herein appear. The appellee, Ruth Higgins, filed claim under the provisions of the act as the dependent wife of the decedent. The appellant resisted the claim, offering as a defense before the board: (1) That the claimant had voluntarily abandoned her husband at the time of the accident and was not a dependent; (2) that he met his death by reason of his willful misconduct and while engaged in an act not in the line of his employment; and (3) in any event the compensation should be reduced by 15 per cent. because Higgins was at the time violating a rule of the company. The board awarded the appellee maximum compensation, and on an appeal to· the circuit court such award was confirmed. The corporation now seeks a reversal of that judgment.

This court has many times held that, in the absence of fraud the findings of fact of the Compensation Board will not be set aside if there is any competent evidence to sustain them. The rule is so well established as to require no citation of authority. It is by this standard the evidence and judgment in the case must be measured and considered, and we may therefore confine ourselves to the testimony tending to support the award.

1.   On the first ground of defense, the evidence disclosed that appellee was about 17 years of age and her husband 22.   They. had been married only about two months at the time he met his death.   It appears that her husband had become jealous of a certain young man, and accused her of flirting or misconduct, because of which she had gone to the home of her married sister about a mile and a half away three or four days before the accident occurred.   It is shown and not contradicted that her husband had been to see her nearly every day and had spent the entire afternoon with her just before he lost his life.   By several witnesses she was absolved of any misconduct, and, while there was some evidence to the contrary, the proof is persuasive of her innocence, of which she convinced her husband.   She had several times stated she intended to return home when he had gotten in a good humor with her.   She and her sister testified their differences had been reconciled and she had determined to return home, but did not do so that afternoon because her husband was going to work on the night shift and she had some ironing to do.   She had not gone to her parents' home in Barbourville, but remained in the vicinity, and as soon as she learned of the accident went immediately to her husband and stayed with him until the end.

We are not prepared to say that this 17 year old girl, having had a petty quarrel with her husband of two months and gone to the home of her sister nearby, had abandoned him and ceased to be dependent upon him for support.   The mere act of leaving the home under such circumstances is not necessarily an abandonment by her.   Mayes v. Mayes (Ky.) 115 S. W. 717.   Her husband was at all times under the legal obligation to support her, and he did so, as she drew scrip on the mining corporation during the brief separation.   Such a temporary condition, even as was disclosed by appellant's proof, cannot be held to deprive appellee of her right of compensation as the dependent wife of the deceased employee.   Fordson Coal Co. v. Burke, 219 Ky. 770, 294 S. W. 497.   To hold otherwise would be to do violence to the aims and objects of this act.

2.   Ben Higgins belonged to the electrical force or gang, and his duty was to bond or weld the rails and keep the trolley wires in repair.   In doing his work he used an apparatus which weighed not less than 75 pounds, and sometimes other equipment in connection

with it.  It was the practice to move this machinery from place to place within the mines, and, although there were handles on it and two men could carry the apparatus, it was usually moved about on small cars propelled by an electric battery.  At times Higgins used a larger car operated by a motor, principally used for hauling coal out of the mine. On the night on which he met his death, it appears that he found one of these larger cars about a mile back in the mines near the place at which he was working and loaded his welding apparatus on it and started out.  He came up behind a string of small cars drawn by one propelled by storage batteries, and, when they had been unloaded of timbers brought in on them and started out, appellant placed his more powerful and higher geared machine behind them, causing the smaller cars to go at a more rapid rate than they could be run by their own motive force.  Asher Hall was in charge of this train, and is the only eyewitness to the accident.  He testified that they had gone about 200 feet when he became frightened at the speed at which he was going and put on the brakes, but as to whether it was partially or with full effect his testimony is not definite.  At any rate, the empty cars between Hall's car and the tramcar being operated by Higgins were caused to buckle just as they passed over a switch.  This caused them to leave the track and knock out some props, precipitating the roof of the mine on Higgins, and producing injuries from which he died within a few hours.

Appellant maintains that this was such willful misconduct on the part of Higgins as to prevent recovery of compensation by his dependent. We do not so consider it. Section 4882, Kentucky Statutes, in part provides:

"Notwithstanding anything hereinbefore or hereafter contained, no employee or dependent of any employee shall be entitled to receive compensation on account of any injury to or death of any employee caused by a willful, self-inflicted injury, willful misconduct or intoxication of such employee."

The term "willful misconduct," as used in Workmen's Compensation Acts, has a distinctive meaning and application.  In Harlan Gas Coal Co. v. Trail, 213 Ky. 226, 280 S. W. 954, it was held that a workman killed in attempting to remove a wire after warning of its being charged with electricity was not guilty of willful misconduct; and the following definition by the Massachusetts

Supreme Court (In re Burns, 218 Mass. 8, 105, N. E. 601, Ann Cas. 1916A, 787, 5 N. C. C. A. 635) was approved:

> "Serious and willful misconduct is much more than mere negligence or even than gross or culpable negligence." "It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."

In Baltimore Car Foundry Co. v. Ruzicka, 132 Md. 491, 104 A. 167, 4 A. L. R. 113, it was held that the action of an employee in passing between standing cars after being notified that they were about to be moved was not within a provision of the Workmen's Compensation Act denying recovery for injury due to willful misconduct.

Other cases in which this question was considered may be found in the annotations in the last-cited publication.

For an employee to be guilty of "willful misconduct," under the statute, his conduct should involve an intentional, deliberate action with a reckless disregard of consequences either to himself or to another—something less than voluntary self-infliction of injury, but greater than gross negligence or wanton carelessness.

While Higgins perhaps was negligent and contributed to bring about his own death, yet we think the board was fully warranted in reaching the conclusion that it was not such misconduct as prevents his dependent from recovering compensation. Appellant contends that the excessive speed and "horse play" on the part of deceased caused the wreck. But there is as much reason for the conclusion that the cars buckled or left the track because Hall on the front motor applied his brakes just as these empty cars were passing over a switch. Judgment cannot be reversed on this ground.

3. The appellant also contends that Higgins, at the time of his death, came within the purview of the provisions of section 4910, Kentucky Statutes, which are to the effect that, if an employee intentionally disobeys any lawful and reasonable rule, order, or regulation of the employer for the safety of its employees, compensation shall be decreased 15 per cent. in the amount for which the employer may otherwise be held liable. In Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142, the

court held that this section of the statute should be read in connection with section 4882, above referred to.    So, while an employee may not be guilty of conduct preventing recovery altogether, if injured by reason of a deliberate violation of a reasonable safety rule, the compensation provided will be diminished because of such lesser degree of misconduct.

There is a conflict in the evidence as to whether or not Higgins was violating any rule of the company at the time he met his death.   There is considerable evidence to the effect that as a member of the electrical crew Higgins was permitted to use at any time the car on which he was hauling his welding tool, without specific order or direction of the foreman or superintendent, which was required for employees engaged in other work.   It was shown that he and others in this line of employment often used this trolley car, as well as battery cars, to transport their equipment; that the former was operated substantially in the same way as the latter.   There is some proof in the record that Higgins and employees engaged in similar work had been instructed to use these tram motors at times so the other motors might have their batteries recharged during the night.

The chief electrician, who was Higgins' immediate superior, stated there were no written or printed rules that he knew of forbidding the use of this tram car by members of his crew, but such practice was not customary and would be in violation of rules and directions given by him.   There was evidence that there were posted about the mines caution cards or safety rules having a general application, and warning employees to exercise care for their own safety and the safety of one another, but no publication of any specific rule which Higgins might have been violating at the time he sustained his fatal injuries.

Under the liberal construction which is required to be given the Workmen's Compensation Act, the facts established in this case warranted the decision of the board.   The foregoing statement of the evidence will disclose that the court should not reverse the judgment under the well-established rule by which we are governed.

Accordingly, the judgment is affirmed.