## Reynolds Metal Co. v. Glass et al.

June 14, 1946.

624

Robert F. Vaughan for appellant.

Lawrence S. Grauman and Charles W. Anderson for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 7, 1944, Emma Virginia Glass was, and had been for something near one month, an employee of appellant, Reynolds Metal Company, at its manufacturing plant in the city of Louisville, Kentucky. On that day she sustained a fatal accident. Both employer and employee had accepted the provisions of our compensation act. KRS 342.001 et seq.

She was survived by her husband, Andrew L. Glass, and six infant children all of whom were under the age of 16 years, and were living in the home of and supported by the two parents, but the husband was not the father of the oldest child, who was born before the marriage, but had always lived with and was supported by the couple after their marriage. In due time the husband, as next friend of the six infant children, made application on their behalf to the compensation board for an award for the benefit of them. A referee determined that the infants in the aggregate were entitled to $12 per week for four hundred weeks, and that finding was later· approved by the full board.

Appellant then filed this reviewing action in the Jefferson circuit court seeking a reversal of the findings of the board and its referee upon the ground that the claimants were not entitled to any allowance under sections 342.070, KRS, section 4893, Carrolls Stats., and 342.075, KRS, section 4894, Carrolls Stats. The first section prescribes for compensation and the amount thereof to survivors of the deceased servant when the accident was fatal to him or her; provided the death was the result of the accident "within two years" from the date of the injury. Subsection (2) of that section says: "(2) If there are one or more wholly dependent persons 65 percent of the average weekly earnings of the deceased employe, but not to exceed $12 nor less·than $5 per week shall be payable, all such payments to be made

for the period between the date of death and 400 weeks after the date of accident to the employe, or until the intervening termination of dependency, but in no case to exceed the maximum sum of $4,800.''

Subsection (1) (c) of section 342.075, KRS, says: ''(c) A child or children under the age of sixteen years, or over sixteen years if incapacitated from wage-earning, upon the parent with whom such child or children are living or by whom actually supported at the time of the accident.''

Both sides agree that the question involved is purely a legal one. The facts—except as to the dependency —were stipulated. The husband at the time of his wife's death, as a laborer for an employer in Jeffersonville, Indiana, was earning a net salary of about $39 per week, whilst his wife was earning at her then employment by appellant a weekly wage of about $27. The six infant appellees were all born within a space of about nine years, which curtailed the earning capacity of the deceased to a considerable extent, but she nevertheless engaged in employments on all occasions when she could devote the time to the service, and could procure a job. On such occasions she would procure some one to remain at her home and look after her children, and at the time she sustained the fatal accident she had employed a woman for that purpose at a weekly wage of $10. Practically the entire balance of her earnings went into the family treasury mostly for food and other provisions for the members of her family.

At the hearing before the board the stipulation, and the testimony of the husband and the nurse, constituted the sum total of the evidence presented to the board which, of course, was also true throughout the litigation. It is the contention of learned counsel for appellant that the ''deceased employee''—though a parent—does not embrace both father and mother, but refers only to the parent who is primarily obligated to support them and with whom the wholly dependents were chiefly supported at the time of such parent's death, and with whom ''such child or children (wholly dependents) are living or by whom actually supported at the time of the accident.'' (Our parenthesis.) Counsel admits that ''the exact question presented on this record has never been decided in Kentucky'', and the chief, if not the only,

case cited in support of the contention is Fox v. Industrial Accident Commission, 194 Cal. 173, 228 P: 38, an opinion by the California Supreme Court and, as counsel claims, is "directly in point". But our reading of the opinion in that case does not to our minds make it one "directly in point". To begin with the entire statute of California is not contained in that opinion, but if it were couched in the same language as is our compensation statute then the facts do not fit the situation we have here. We deem it unnecessary to recite them (facts) since they may be readily obtained by referring to the opinion. However, if the facts and the statute in that case were identical with those in this case the opinion would, to our minds, be erroneous and should not be followed, and the same would be true if the language of our statute were less plain and explicit, so as to create a modicum of ambiguity or confusion.

The text in 71 C. J. 541, section 290, says, inter alia: "A dependent child's right to compensation under the Workmen's Compensation Act is based on the employee status of the deceased parent, and the right is the same whether the employee is father or mother."

There is cited in support of that text the case of Nordmark v. Indian Queen Hotel Co., 104 Pa. Super. 139, 159 A. 200, in which there was presented to the Superior Court of Pennsylvania practically the identical question we have here based upon substantially the same facts as well as substantially the same phraseology contained in the compensation act of that state. In construing the rights of the surviving children of a mother who was survived by her husband and who was fatally injured while working under the compensation act of that state, that court quoted and approved what was said in a former opinion of the same court in the case of Kusiak v. Hudson Coal Co., 91 Pa. Super. 106, the quotation being: " 'It seems clear that a deceased employee's children under the age of sixteen years were the first objects of the Legislature's bounty; for, age of less than sixteen years is the only condition of the right of such children to receive compensation. As to them there is no other qualification. Actual dependence, in the sense that they were being supported wholly or partly by the father at the time of the accident was not made a condition of their right to receive compensation, although such a condition was annexed as to all other beneficiaries

specified;' that 'a child under the age of sixteen years is a dependent by the terms of Section 307' and that when proof that a child is under the age of sixteen years affirmatively appears in the record as a fact, 'no other proof of dependency is required.' "

That interpretation was—by implication at least—adopted by us in the case of J. F. Hardymon Co. v. Kaze, 241 Ky. 252, 43 S. W. 2d 678, 679, 680, in which we said, inter alia:

"It is the settled construction of the statute quoted that the presumption of dependency in the cases to which it applies is conclusive upon the courts as well as the Workmen's Compensation Board. * * *

"Moreover, the statutory presumption is a rule of evidence in a certain class of cases which cannot be put in issue or adjudicated so as to preclude a hearing of a distinct case where the presumption does not prevail. Indeed, the statute (Ky. Stat. sec. 4894) expressly provides, after creating the presumption of total dependency in certain specified cases, that 'in all other cases the relation of dependency in whole or in part shall be determined in accordance with the facts of each case existing at the time of the accident.' Ky. Stats. sec. 4894. (Now KRS 272.070.)" (Our parenthesis.)

But counsel for appellant in combating such interpretation—which was followed by the trial court herein—quotes and relies on the text in 59 C. J. 1039, section 161, saying: "All statutes are presumed to be enacted by the Legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts; * * *."

Counsel then cites other sections of our statutes which it is claimed have some bearing upon the proper interpretation of the applicable sections supra of our compensation act, an example of which is section 405.-020 which says that "the father shall be primarily liable for the nurture and education of his minor children." But the necessity for the consideration of other statutes

as set forth in the above text of C. J. arises only when the statute under consideration and to be construed is, at least to some extent, ambiguous. When it is not so the rule is, as stated by us in a number of cases, the latest of which is, Department of Revenue v. McIlvain, Special Tax Collector, 302 Ky. 558, 195 S. W. 2d 63, that: "In the interpretation of writings, including statutes, the primary factor to be considered is to determine the intent of the maker, and which in turn is to be determined by the language employed. If that language is plain and unambiguous its meaning should be upheld as so expressed, uninfluenced by any unwise or unusual result that might follow the upholding of the plainly expressed writing or statutes, which is but following frequent expressions of courts to the effect that the intention to be gathered from employed language is the one that it plainly expresses, and not the one that may have been in the mind of the composer, but which he failed to express. In other words, the intention is gathered from what the writers of such documents, including statutes, actually said and not from what they may have intended to but did not say."

Compensation acts are of modern origin enacted in furtherance of a healthy public policy whereby laborers may be at least partially compensated for impairment of their earning capacity as the result of accidents, or to partially compensate those dependent upon them for maintenance and support for their loss when the one upon whom such dependency emanates sustains a fatal accident. Therefore, it is to be construed so as to carry out its plainly expressed purpose and not by other statutes relating to wholly foreign purposes. Hence in the case of Blue Diamond Coal Co. v. Frazier, 229 Ky. 450, 17 S. W. 2d 406, 407, we, in recognition of such purpose of the statute, said: "The rule also is that the Compensation Act must be liberally construed, with the view to promoting its purposes. One of the purposes of the act is to provide for the dependents of the workman injured in the course of his employment, for their right to sue and obtain compensation for his death, under the constitutional provision, is taken away. The statute, therefore, should be liberally construed in their favor. A person may be wholly dependent on an employe, although he may have some slight savings of his own, or

some other slight property, or be able to make something by his own services. 40 Cyc. p. 60, sec. 51. In Fordson Coal Co. v. Burke, 219 Ky. 770, 294 S. W. 497, the mother of a workman who had been killed was held entitled to compensation as a wholly dependent person on proof of facts not as strong as the proof here, and very similar to it. The same conclusion was reached in Tway Coal Co. v. Fitts, 222 Ky. 644, 1 S. W. 2d 1082, where the proof was no stronger than in this case.''

That excerpt was reiterated by us in the Sutton case, infra, and we have been unable to find any case detracting from its force and effect.

We have hereinbefore said that the language of 342.075, supra, is plain and unambiguous to the effect that children of a deceased parent with whom they are living ''shall be presumed to be wholly dependent upon a deceased employe'', who in this case was their mother with whom they were living, and each of them were of the age making them such wholly dependents.

In the Hardymon case and also in the cases of Jones, by next friend v. Louisville Gas & Electric Co., and O'Reilly v. Louisville Gas & Electric Co., 209 Ky. 642, 273 S. W. 494; Layman-Calloway Coal Co. v. Martin, 209 Ky. 690, 273 S. W. 496; Rockhouse Coal Co. v. Collins, 212 Ky. 137, 278 S. W. 540; Coleman Mining Co. v. Wicks, 213 Ky. 134, 280 S. W. 936; Nolan v. Giacomini, 250 Ky. 25, 61 S. W. 2d 1055, and U. S. Coal & Coke Co. v. Sutton, 268 Ky. 405, 105 S. W. 2d 173, we held that the presumption of ''wholly'' dependency of a child in the circumstances described was a conclusive one and could not be defeated or otherwise contradicted by extraneous testimony in all cases where the dependent child or children met the provisions of the section of the statute.

Looking to the expressed provision of section 342.-075, supra, we find that the applicants for compensation in this case are the children of their deceased mother who, of course, was one of their parents, and they were living with her at the time of her fatal accident. Consequently, they under the plainly expressed language of the statute as her children are within the class of wholly dependents and occupy the status described in the statute, which entitles them to receive compensation provided by the Act due them as such dependents. We

find nothing therein qualifying or impairing that right, or confining it to the right to collect compensation only for the death of that parent whose primary duty it is to maintain and support his children, but which latter is the position taken by learned counsel for appellant.

In order to so confine the right of compensation in such cases there would have to be interpolated in subsection (c) of the section substantially these words: "of the parent upon whom the law cast the primary duty to maintain and support them", so as to make subsection (c) of the statutory section read: "A child or children of the parent upon whom the law cast the primary duty to maintain and support them," etc. Under the rule announced in the McIlvain case, supra, no such interlineation is allowable. Indeed the effect of such insertion would be tantamount to an amendment of the statute as it now reads.

Under subsection (2) of section 342.070 (inserted above) dependent claimants occupying the status of appellee in this case are mandatorily required to be allowed as much as $5 per week and not to exceed $12, as measured by "65 percent of the average weekly earnings of the deceased employe." The mother in this case, as we have seen, was earning at the time of her fatal accident between $25 and $27 per week. 65 percent of $25 (the lowest figure) is $16.25, or $4.25 more than the maximum allowance which the tribunals below awarded claimants.

But, counsel suggests that to uphold the judgment appealed from might result in double compensation if the surviving parent died within four hundred weeks covered by the payment period. Consequently he says: "It is submitted that such was not the intention of the General Assembly." We find nothing in the entire compensation act remotely intimating the absence of such legislative intention. In fact, the amount of compensation prescribed for infant dependents upon the death of their parent is extremely meager in amount. Even if there were only one child its necessities could scarcely be supplied by that amount, especially so after arriving at school age when their requirements become much greater, and if perchance circumstances should bring about the case where such dependents would receive, concurrently, compensation for the death of both parents then such dependents, whether one or many could re-

ceive only the total amount, or $24 per week, or $96 per month, which by no means is an extravagant allowance. But, whether such double allowance could or could not be allowed in the supposed case of the death of both parents in the circumstances indicated, is not now before us, and whatever determination we might now make with reference thereto could be characterized only as dictum.

After carefully considering the case we are driven inevitably to the conclusion that the judgment appealed from is proper, and it is affirmed.