# Burbank v. Sinclair Prairie Oil Co.

November 26, 1946.

Rehearing denied June 20, 1947.

M. L. Blackwell, Judge.

834

Clay and Clay for appellant.

King and Flournoy for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Burbank, owner of a large tract of land in Henderson County, on April 8, 1942, leased to parties the exclusive right "to drill for and produce oil" for a stated period. The consideration was "the equal of ⅛ part of all oil produced and sold from the leased property." The lease was later assigned to appellee who began operation and found oil in commercial quantities. In a petition seeking declaration of rights the above facts were set out, and it appears that up until the filing of suit lessee in settling with lessor had deducted ⅛ of the total tax paid under the provisions of Chapter 137, KRS. The chancellor was called upon to declare whether the lessee should bear the whole tax or might collect ⅛ from the lessor; the contention of Burbank is that he should not pay any of the tax, while lessee contends to the contrary; its position set out in answer merely controverting conclusions, it being agreed that an actual controversy exists. The chancellor was of the opinion that the Legislature never intended the law to be construed in the restricted sense urged by plaintiff, and declared Burbank's royalty interest liable.

In order to determine the question it may be well to observe the history of the law. Prior to 1917 there was no oil production tax; about that time production had reached fair proportions, and as time passed it grew until Kentucky became one of the oil producing states. In 1917 the Legislature enacted Chapter 9, Acts of the 1917 Special Session, titled: "An Act imposing a license or franchise on any person, firm, corporation or association engaged in the production of oil in this State and authorizing counties to impose such tax for road, school and county purposes," etc. The first section read: "Every person, firm, corporation and association engaged in the business of producing oil in this State, by taking same from the earth, shall, in lieu of all other taxes on the wells producing said oil imposed by law, annually pay a tax for the right or privilege of engaging in such business."

The pleadings show that (under the present statute) the State tax was ½ of 1 per cent, and the county had levied a tax of 1 per cent. The Legislature of 1918, Ch. 122, Acts 1918, reenacted the 1917 law by "An Act to amend and re-enact Chapter 9 of the Acts * * * of the General Assembly of 1917, which Act imposes a license or franchise tax on any person, firm, corporation, or association engaged in the production of crude petroleum in this State," etc. The first section provided that "Every person, firm, corporation or association producing crude petroleum * * * shall * * * annually pay a tax" for the purposes named in the original Act. It provided that the tax should be "imposed and attach when the crude petroleum is first transported from the tanks or other receptacles located on the place of production." Section 3. This Act was merely curative and clarifying as to method of reaching the quantity and value, and did not indicate any change in the purpose of the original act.

The next Act dealing with the subject is Chapter 157, Acts of 1932, which merely amended sec. 4223c-1 of KS, Section 1 of the 1918 Act "pertaining to tax on oil production * * * * in the State of Kentucky," changing the basis of levy and the method of distribution. This was carried in KS 1936 Ed., now KRS Ch 137, entitled "License Taxes." The first section reads: "Every person producing crude petroleum oil in this State shall * * * annually pay (the) tax * * *." KRS 137.120. Cumberland Pipe Line Co. v. Commonwealth, 228 Ky. 453, 15 S. W. 2d 280, 282, in which the constitutionality of the 1918 law was unsuccessfully attacked, contains a stipulation which sets out the modus operandi. One was: "The producer pumps the oil from his well into his own tank. * * * The Pipe Line Company attaches its pipe to the tank. * * * The producer notifies the Company that he desires the latter to take oil from a certain tank, * * * nor does the producer usually name a definite amount which he wishes withdrawn."

Then follows the method of levy and payment. This stipulation seems to have been accepted by both parties as a fair resume of the manner of operation.

It is contended by appellee that the apportionment of taxes between the royalty owner and lessee is fair

and equitable, since each party receives from the venture the oil or the market value in the proportions of ⅛ and ⅞. This would be so if the tax was on the product. A fair division of the tax is a matter for the Legislature, which may exercise its power without limit, except where curbed by the State or Federal Constitutions.

The next contention is that according a fair interpretation of the lease, both parties should bear the tax, because engaged in a joint business venture. We have little difficulty in concluding that the leasehold does not, nor does the manner of operation constitute a joint enterprise. There is, of course, a joint interest in proceeds but as to operation and management the lessor has no say; no more than as to whom, or when or for what the oil shall be sold. To create the relationship there must be a combination of money, efforts, skill or knowledge in some common undertaking; a joint control; a sharing of profits or losses. Ash v. Miskleson, 118 Okl. 163, 247 P. 680; Leath v. Benton, Abstract & Title Co., Tex. Civ. App., 9 S. W. 2d 501; Tidal Oil Co. v. Fullerton-Stuart Lumber Co., 137 Okl. 58, 278 P. 330; Kanawha Valley Bank v. United Fuel Gas Co., 121 W. Va. 96, 1 S. E. 2d 875.

Counsel for appellee (original brief) says that ''for many years, certainly since this statute was passed, no royalty owner has seen fit to question his obligation to pay his proportion of the tax and since the Legislature did not determine who is a producer, the rule of contemporaneous construction should apply. This point is not emphasized in brief amicus curiæ. The rule is that such construction may be resorted to where enactments are ambiguous and uncertain, and there has been continued construction by authorities entitled to give construction.

It is correctly stated that since the first enactment the question here arising has never been presented to the court, though the law has been subject to controversy in many cases testing the constitutionality of the Act, and other features. Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Swiss Oil Corporation v. Shanks, 208 Ky. 64, 270 S. W. 478; Cumberland Pipe Line Co. v. Commonwealth, 228 Ky. 453, 15 S. W. 2d 280, all holding the tax to be a license tax. The trouble here is

that beyond the statements in brief that such has been the custom for a long time, there is no reference to the custom in the pleadings, nor is there any evidence by stipulation or otherwise which would lead us to conclude that the rule should apply, even if ambiguity exists. The upshot of the suggestion in brief is that the question has never been raised until Burbank raised it.

Appellant places some emphasis on the meaning of the word "producing" as used and applied in every day parlance, and the rule that words of a statute are to be given their ordinary meaning unless a contrary intention appears. Bosworth v. Marshall, 165 Ky. 32, 176 S. W. 348. Webster's 20th Century Dictionary defines a producer as "one who brings something into existence from its original source or materials." In Kanawha Valley Bank v. United Fuel Gas Co., 121 W. Va. 96, 1 S. E. 2d 875, 876, the Act placed an occupation tax on all persons "engaged in the business of producing (oil or) gas." The question here presented was raised there, and the court held that the lessee was the producer. While we did not define the word "producer" in Enfield v. Woods, 198 Ky. 328, 248 S. W. 842, a reading will indicate that the lessee and not the lessor was engaged in "producing." In Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Swiss Oil Corporation v. Shanks, 208 Ky. 64, 270 S. W. 478, and Associated Producers' Co. v. Board of Supervisors, 202 Ky. 538, 260 S. W. 335, 336, it is apparent that the court treated those engaged in developing and bringing in oil, as the producers. In the Shanks case the oil corporation sued on its own, and behalf of other producers, not the royalty owner. In the Raydure case we found the tax to be a license, occupation or production tax on the business of producing oil. It strikes us that the landowner here has done nothing to bring him within the usual acceptation of the word "producer." He only contracted to let appellee "produce" the oil for a stated percentage.

We have pointed out that the original act provided that those "engaged in the production of oil (title), (or those) engaged in the business of producing oil * * * by taking same from the earth, shall * * * pay a (license or franchise) tax for the right or privilege of engaging in such business." Section 1. There can

be no doubt but that the Legislature had in mind that the person, firm, etc., making it his or its business to drill, bring in the oil and put the product on the market, should bear the tax. There may be, as suggested in briefs, cases where the situation may arise, or has arisen, where the lessor may have more than a mere royalty interest; where some are co-workers or have operating interests, and other instances pointed out which would make him liable, but as suggested, the present case is exceptional in that "it appears that the lessee acts as producer, and purchaser as well as transporter of the oil, and pays to the royalty owner the net proceeds of his ⅛ of oil after deducting the production tax." We may say that we are now dealing only with the case at hand, and if we should be called upon to determine the question in a case where the facts are such as to constitute joint venture or fix joint liabilities, we shall be guided by the facts and the law.

The question of proper construction is mainly discussed in amicus curiæ brief, and in opening the discussion lays down the rule by which to determine the intention of the Legislature, that is, from conditions existing at the time and the purpose sought to be accomplished. The brief refers to the dissenting opinion in Swiss Oil Corporation v. Shanks, 208 Ky. 64, 270 S. W. 478, to which the reader may refer. We are of the opinion that it shows who the Legislature considered to be engaged in "production." We think that the first act labeled the "producer," and later enactments did not change the label.

It is then argued that since sec. 1 of the 1918 Act omitted the words "by taking same from the earth," and the words "for the right or privilege of engaging in such business," the purpose was to provide a production tax on the oil produced. We hardly think so. There is a rule that in construing statutes we may look to the language used in the Act and title. Wheeler v. Board of Commissioners, 245 Ky. 388, 53 S. W. 2d 740; Ingram's Adm'r v. Advance Motor Co., 283 Ky. 87, 140 S. W. 2d 840. The court in construing an extant act may refer to prior acts or sections of the statute relating to the same subject in ascertaining the meaning of the law under consideration. Thieman v. Hancock, 296 Ky. 223, 176 S. W. 2d 418. When this rule is applied

there can be no doubt as to the intention of the Legislature in the use of the word "producing." The later acts do not alter the original purpose, but only changed rate of taxation and method of reaching taxable value, and other features for clarification.

It is of interest and persuasion to note similar laws of other oil producing states and court rulings touching the question here discussed. In referring to these we give credit to Summer's Oil and Gas, Vol. 4, dealing with taxation of minerals. Arkansas, Louisiana, Michigan, Oklahoma, Mississippi, New Mexico and Texas have, and some have had prior to 1917, taxes on the production of oil. The tax, variously called license, franchise, production, privilege or severance taxes. In each of those named the Legislature provided specifically that the tax should be borne by the producer or lessee and the royalty owner; the lessor in some being classified as a producer.

Mr. Summers in reference to this character of taxation suggests that such tax is not a property tax but one "upon the business of severing and producing oil. In some states the tax is borne by the lessee and royalty owner proportionately, but in others by the lessee or producer alone." In referring to the Michigan law, a severance tax on all persons producing oil and gas, the author says: "This Act does not expressly state that a producer may deduct from the royalty payments the tax due from royalty oil and gas, thus indicating that the royalty owner bears no part of the tax burden."

In Illinois the tax was on persons engaged in the business of producing oil, (occupation tax) and royalty owners were to bear a proportionate share. In Ohio Oil Co. v. Wright, 386 Ill. 206, 53 N. E. 2d 966, the court held, notwithstanding the provision of the Act, that the effort to tax the royalty owner was illegal, because oil royalty owners are not engaged in the business of producing oil or gas, hence not subject to an occupation tax.

Without going into detail, we find that in other States having similar acts, and which do not define the word "producer" or where the Act does not make the lessor proportionately liable, the courts have held the tax not to extend. Kanawha Valley Bank v. United Fuel Gas Co., 121 W. Va. 96, 1 S. E. 2d 875. Prior to 1933

Texas Law provided a tax on all who engaged in producing crude oil and did not define "producer." The court held that the royalty owner was not liable. State of Oklahoma v. State of Texas, 266 U. S. 298, 300, 45 S. Ct. 101, 69 L. Ed. 296, 297. In Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 528, 67 L. Ed. 929, the court considered a law of Minnesota, which provided that "every person engaged in the business of producing iron ore * * * shall pay," etc. Laws 1921, c. 223. In holding the royalty owner to be excluded, the court said: "We think the tax in its essence is what the act calls it—an occupation tax. It is not laid on the land containing the ore, nor on the ore after its removal, but on the business of mining the ore, which consists of severing it from its natural bed and bringing it to the surface where it can become an article of commerce * * *."

Upon the authorities cited, and after a careful consideration of the question, we are of the opinion that the original act as amended cannot be construed as placing any part of the tax in question on one who is simply royalty owner.

Judgment reversed with directions to set it aside and for the entry of one consistent herewith.