James BROWN, Appellant,

v.

Bruce HOBLITZELL, Sheriff and Jailer of Jefferson County, Appellee.

Court of Appeals of Kentucky.

Nov. 16, 1956.

As Modified and Extended on Denial of Rehearing Dec. 13, 1957.

Robert W. Zollinger, Louisville, for appellant.

Jo M. Ferguson, Atty. Gen., Robert F. Matthews, Jr., Asst. Atty. Gen., Frankfort, Ky., A. Scott Hamilton, Commonwealth Atty. of Jefferson County, Charles W. Dobbins, County Atty. of Jefferson County, Oldham Clarke, Special Attorney for Jefferson County, Louisville, for appellee.

Louis Lusky, Louisville, for Civil Liberties Union, amicus curiae.

MONTGOMERY, Judge.

This is an appeal from a judgment denying the appellant, James Brown, release

from the Jefferson County jail on a writ of habeas corpus.

The response was that appellant was in appellee's custody, as jailer, under five commitments from the Jefferson Quarterly Court, dated November 19, 1953. No question is raised as to the form of the commitments or whether they were issued on the judgments described later.

It is urged that the judgments are void because: (1) they were rendered by a person who had no legal judicial authority or power; and (2) the petitioner was convicted on five charges but was tried on only one; he was deprived of the right of trial by jury; and in the absence of the jury trial, he should have been sentenced only for the minimum term or to pay the minimum fine instead of having the maximum penalty imposed in each case.

The second basis for attack on the judgments will be considered first.

On October 25, 1953, appellant, while operating a motor vehicle on U. S. 42 near Louisville, was involved in an auto collision in which four women were killed. Other persons were injured. Appellant was arrested at the scene of the accident.

Eight charges were placed against appellant in the Jefferson Quarterly Court. These were: 70806½, manslaughter; 70806 and 70814¾, KRS 189.250 (drunken driving); 70813, public drunkenness; 70813½, 70813¾, 70814, and 70814½, KRS 435.025 (negligent homicide by auto). Cases 70806 and 70806½ were continued on October 26, 1953, to November 2, 1953. On the following day, the other six charges were continued to November 2, 1953.

The eight cases were continued again to November 19, 1953. Six subpoenas for six witnesses were issued on November 2, 1953, in 70813, charging public drunkenness, for their appearance on November 19, 1953. A list of the witnesses, including the two police officers making the arrest, is enclosed as a part of the record in that case.

A trial was had on November 19, 1953, without objection or request for continuance. Benjamin Shobe appeared as attorney for the defendant. The parties stipulated in the beginning "that Rosa Haury lost her life as a result of an accident involved in this case". Witnesses testified that four automobiles were involved in the collision. The appellant was very drunk and his gross negligence in driving one of the cars had caused the accident. In addition to Rosa Haury, Anna Pfisterer, Elizabeth Pfisterer, and Mrs. Anthony Miller were killed; others were injured. At the conclusion of the introduction of evidence by the Commonwealth, the attorney representing appellant stated, "The defendant will not testify at this time." Oral argument was made by counsel for each side.

Then, the trial commissioner expressed appreciation of Mr. Shobe, an attorney, for representing the defendant "on the spur of the moment", and stated his opinion that Brown was drunk while driving his automobile and had caused the accident. Referring to the statute on negligent homicide by means of an automobile, the commissioner continued, "I am sure that the defendant is going to appeal my decision, but I am going to give him a year in jail on each one and a $500 fine on drunken driving. * * * One year on each case, and $500 fine for the drunken driving."

This order was then entered:

"70813½ Commonwealth vs. James Brown Viol. 435.025; 70813¾ Commonwealth vs. James Brown Viol. 435.025; 70814 Commonwealth vs. James Brown Viol. 435.025; 70814½ Commonwealth vs. James Brown Viol. 435.025.

"Came the defendant in person, the Court having heard the evidence, and being sufficiently advised, the defendant being adjudged guilty, it is ordered by the Court that the defendant is to be confined to the Jefferson County Jail for a period of one (1) year on each of the above actions, making a

"total of four (4) years in jail to be served."

The public drunkenness charge (70813) and drunken driving charge (70806) were consolidated with the other drunken driving charge (70814¾). Appellant, "upon evidence heard", was adjudged guilty and fined $500 and $5.50 court costs. The manslaughter charge was "filed away". It does not appear when this last order was made with reference to the time of the trial.

The commitments were issued on these judgments. The order book containing the entries of November 19, 1953, is signed:

"Thomas H. Young
  Special Trial Commissioner

"M. O. Henchey
  Trial Commissioner

"Boman L. Shamburger
         Judge"

Appellant made no objection whatever to the trial commissioner's conclusions that he was guilty of five charges or to the entering of five judgments thereon. He did not appeal.

In the habeas corpus proceeding, the lower court concluded that the "petitioner had a fair and impartial trial", the facts justified his conviction, and there was no arbitrary action on the part of the quarterly court commissioner, who was a de facto judge; hence, the judgments were not void.

■ An attack on a judgment by petition for writ of habeas corpus is a collateral one. The petitioner must establish by the record of his trial that the judgment of confinement is void. Brown v. Commonwealth, Ky., 243 S.W.2d 885; Owen v. Commonwealth, Ky., 280 S.W.2d 524.

■ The Jefferson Quarterly Court had jurisdiction of the person and of the offenses charged. The appellant made no objection to the proceeding. He made no demand for a jury trial. Failure to de-

mand a jury trial waives the right to it. Garner v. Shouse, 292 Ky. 798, 168 S.W.2d 42; Williams v. Pierson, 301 Ky. 302, 191 S.W.2d 574. It is error for the court to impose more than the minimum penalty on a plea of guilty without the defendant having had the advice of counsel. Criminal Code Section 258; KRS 431.130; Parsley v. Commonwealth, Ky., 272 S.W.2d 326. There is no such error here. The appellant was acting with advice of counsel. Lee v. Buchanan, Ky., 264 S.W.2d 661. While the record in this case is silent as to whether the appellant pleaded "not guilty", that plea is implicit in the fact that evidence was heard on the question of his guilt. Meece v. Commonwealth, 78 Ky. 586, 1 Ky.Law Rep. 337; Dabney v. Commonwealth, 226 Ky. 119, 10 S.W.2d 612. Error in consolidating several charges or warrants for trial is not reviewable on habeas corpus. 39 C.J.S., Habeas Corpus, § 21, p. 469, note (1).

Appellant contends that the proceeding was an examining trial on the felony charge, manslaughter; and that no sentence could be imposed. The caption of the stenographer's transcript of the trial had "No. 70814" typed underneath "Jefferson Quarterly Court". At the habeas corpus hearing, appellant's counsel identified the copy of the transcript of evidence at the trial in the following words: "It's been borrowed from Temple Lewis, the insurance adjuster who settled this case by paying all of the damages which the insuror (sic), Elizabeth Pfeister (sic) was liable for." This statement, together with the stipulation as to the death of Rosa Haury and the designation of the transcript by the number of the negligent homicide case in which her death was involved, serve to indicate that the adjuster had procured the transcript for use in the investigation of a claim against the estate of Elizabeth Pfisterer, also killed in the accident.

■ There is no merit in the contention that the proceeding was an examining trial on the charge of manslaughter rather than

a final trial on the five charges in which judgments were rendered. From the record before us, it is apparent that the appointed counsel was very capable and performed his duty well, as was pointed out at the conclusion of the trial by the trial commissioner. In his brief, appellant's present counsel admits the competency of the attorney. The record shows that Mr. Shobe cross-examined the prosecution witnesses with vigor and skill. He argued the case at the close of the testimony. When the determination of the guilt and punishment was made, it is hard to believe that such an able defense counsel would have failed to make some objection or demand some explanation if he had gone through the trial thinking it was an examining trial instead of a final trial on the merits. The failure to object under such circumstances is very persuasive of the view that it was not an examining trial. The continuances in the eight cases, their final disposition on the same day, and the issuance of process for witnesses in the public drunkenness case are also inconsistent with the view that the hearing was an examining trial on the felony charge. While the record is silent as to any agreement to hear the five charges together, all of the attendant circumstances indicate such an agreement. The statement of the trial commissioner that he expected the decision to be appealed is uncontradicted and clearly indicates that he considered the hearing to be a final trial rather than an examining trial.

The appellant had five serious charges against him. The evidence introduced at the hearing indicates that four felony charges might well have been placed against him. From the record, it is apparent that he was fortunate to have escaped more severe punishment. The conclusions of the lower court that appellant "had a fair and impartial trial" and that the facts justified his convictions are sound.

The remaining contention of appellant is that he was convicted when the quarterly court was not in session and neither the county judge, the judge pro tem, nor a special judge was present. He was tried before a trial commissioner appointed by the county judge under the provisions of KRS 25.280. No question is raised as to the validity of the appointment. Appellant questions the right of a trial commissioner appointed pursuant to KRS 25.280 to hear and determine cases in the quarterly court in view of KRS 25.450 and KRS 25.460, providing for the county judge, county judge pro tem, or special judge as presiding officer of that court.

The position urged is that the trial commissioner was a usurper and was not legally authorized to serve on a trial of criminal prosecutions in quarterly court. It is argued that there was no statutory provision for a trial commissioner of the quarterly court, but if there had been, then his action would have been a nullity since a judge of a court may not delegate his judicial duties or functions, or vest a commissioner with judicial power, and further that each person accused of crime has the constitutional right to be tried by a court or a judge who hears the evidence and not by a court or judge acting by or through a proxy.

Our court system has evolved through the years since the beginning of statehood. The development has been by constitutional adoption and statutory enactment, as necessity demanded.

The county court, as a constitutional tribunal, was first established in 1850. Kentucky Constitution 1850, Article IV, § 29. Prior to 1850, the judicial power was vested in one supreme court and "in such inferior courts as the legislature may from time to time ordain and establish." Kentucky Constitution 1792, Article V, § 1; Kentucky Constitution 1799, Article IV, § 1. Previously, county court appears to have been recognized as one of the inferior courts. Kentucky Constitution 1850, Article IV, § 33.

It is interesting to note that the county court established in 1850 consisted of a presiding judge and two associate judges.

It was provided that the General Assembly might abolish the office of associate judges, "in which event they may associate with said court any or all of the justices of the peace for the transaction of business." Kentucky Constitution 1850, Article IV, § 29.

The quarterly court was established as a constitutional tribunal in 1891, to be presided over by the judge of the county court. Kentucky Constitution 1891, § 139. Reference has been found to an earlier court of quarter terms, an inferior court, authorized by statute. In the same Constitution, Section 140 provides for a county court to consist of a judge who shall be a conservator of the peace.

The appointment of a trial commissioner by the judge of the county court "to discharge such judicial duties as may be assigned" was first authorized in 1926. Carroll's Kentucky Statutes, 1930 Edition, Section 1077b-1. Upon the re-enactment of this statute as KRS 25.280 in 1942, the authority was enlarged to appoint a trial commissioner, or commissioners.

The statutes authorizing the appointment of a county judge pro tem, KRS 25.140; providing that such officer may preside over the quarterly court, KRS 25.450; and authorizing the appointment of a special judge of the quarterly court, KRS 25.460; were all enacted prior to enactment of KRS 25.280, authorizing the trial commissioner. Carroll's Kentucky Statutes, 6th Edition, 1922, §§ 1056 and 1059.

■ In determining whether a conflict exists between the statutes mentioned, resort must be had to the rules of statutory construction, which is a function of the Court. Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815. The exercise of this duty must bring about a practical result. Gillis v. Anderson, 256 Ky. 472, 76 S.W.2d 279. A fundamental rule of construction is that the applicability and scope of the statute may be determined by ascertaining the Legislature's intent and purpose, considering the evil the law was intended to remedy and other prior and contemporaneous facts and circumstances that throw intelligible light on the intentions of the law-making body. Sewell v. Bennett, 187 Ky. 626, 220 S.W. 517; Dougherty v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 262, 130 S.W.2d 756; Swift v. Southeastern Greyhound Lines, 294 Ky. 137, 171 S.W.2d 49; Kelly v. Marr, 299 Ky. 447, 185 S.W.2d 945; City of Louisville v. Helman, Ky., 253 S.W.2d 598.

■ ■ In enacting laws, the Legislature is presumed to take cognizance of the existing statutes and the condition of the law so that when the statute under consideration is ambiguous, the new enactment is to be construed in connection and in harmony with the existing laws as a part of a general and uniform system of jurisprudence. Button v. Hikes, 296 Ky. 163, 176 S.W.2d 112, 150 A.L.R. 779; Reynolds Metal Co. v. Glass, 302 Ky. 622, 195 S.W.2d 280. Apparent conflicts or repugnancies between statutes on the same general subject enacted at different times should be reconciled in the light of the existing statutes and Constitution. Cawood v. Coleman, 294 Ky. 858, 172 S.W.2d 548; Burbank v. Sinclair Prairie Oil Co., 304 Ky. 833, 202 S.W.2d 420. If the conflict cannot be reconciled, the later statute controls. Butcher v. Adams, 310 Ky. 205, 220 S.W.2d 398.

In considering the development and establishment of inferior courts by statutory and constitutional means, it is readily seen that the need for such courts has given rise to their creation. This development has been continuous since the first Constitution was adopted. The county court was established by statute before its creation as a constitutional body. The quarterly court followed the same pattern later. The need for additional personnel to assist in the proper functioning of the court was recognized by provision for associate judges of the county court, use of justices

of the peace, county judge pro tem, and special judge. One solution by the courts of this state at all levels of the judicial system has been the use of commissioners authorized by statutes. See KRS 21.150, Commissioners, Court of Appeals; Heydrick v. Dickey, 155 Ky. 222, 159 S.W. 666; KRS 27.040 and KRS 27.050, Master and Special Commissioners, Circuit Court. See Kentucky Constitution Section 246 for a belated recognition of the Commissioners of this Court. The use of a special commissioner to assist the county judge in making fiduciary settlements was authorized. Carroll's Kentucky Statutes, 6th Edition, 1922, § 1062. The commissioner in each instance is responsible to the judge or court making the appointment for the performance of assigned duties. The same is true of the trial commissioner.

■ When the trial commissioner statute was first enacted, it obviously was to afford the county judges in the more populous counties of the state some relief in the performance of their judicial duties. The continuing greater need was again recognized in 1942 when the statute was re-enacted and provided for more than one commissioner. Both in 1926 and 1942, when the growth, complexity, and multiplicity of litigation in the more populous counties were considered, the need for more personnel to assist in the performance of the judicial duties of the county judge was apparent. In some instances, the administrative duties of the county judge required full-time attention. The Legislature evidently realized the situation and must have intended the enactment of the trial commissioner statute as a remedy in addition to the remedies already afforded by the judge pro tem and special judge statutes, each of which has a specific purpose. The trial commissioner statute is broad in scope and enables the county judge to assign any judicial duty for performance by the commissioner. Considering the volume of legal matters in the various courts over which the county judge of Jefferson County is authorized to preside, it is humanly impossible for the county judge, judge pro tem, and special judge to handle them. It, therefore, is concluded that the trial commissioner statute was enacted by the Legislature with cognizance of the existing statutes and to remedy a specific situation, and as such, it is supplementary to the judge pro tem and special judge statutes, rather than in conflict with them. Insofar as the previous existing statutes, KRS 25.450 and KRS 25.460, may be construed as mandatory by reason of the use of the word "shall", they are considered as having been amended by KRS 25.280, and the use of the word "shall" has become directory in order to effectuate the intended purpose of the Legislature. Skaggs v. Fyffe, 266 Ky. 337, 98 S.W.2d 884.

■ The trial presided over by the trial commissioner was held in the exercise of proper judicial authority as one of the judicial duties assigned by the county judge. The judgments upon which the commitments were issued were signed by the trial commissioner and county judge. The approval by the county judge constituted his acceptance of responsibility for the acts of the trial commissioner.

■ Finally, the appellant should have exhausted his remedy by appeal. Each of the errors complained of by him could have been reviewed on an appeal from the Jefferson County Quarterly Court to the Jefferson Circuit Court and by a subsequent appeal to this Court, if desired. On appeal to the circuit court, the case, or cases, would have been tried de novo. Criminal Code of Practice, Sections 362 and 366. The appeal and new trial would have eliminated any question with reference to the lack of judicial authority or power in the presiding judge. Likewise, the complaint of trial on multiple charges without a jury and of imposition of punishment in excess of the minimum would have been eliminated. On the de novo trial, appellant could have requested and obtained separate trials by jury on each

charge. The jury would have fixed the punishment in each case upon a verdict of guilty. The trial would have been presided over by the circuit court judge. Even had the appellant pleaded guilty on each of the charges complained of in the quarterly court, he could still have appealed. A judgment entered on a plea of guilty in the quarterly court is appealable and is triable de novo in the circuit court. Holtman v. Commonwealth, 129 Ky. 710, 112 S.W. 851; Williams v. Commonwealth, 307 Ky. 37, 209 S.W.2d 477. By the present proceeding, appellant is attempting to secure the relief that was available to him by an appeal which he did not take.

Judgment is affirmed.

Judges HOGG and SIMS dissent.

SIMS, Judge (dissenting).

I must register my dissent from the majority opinion because I feel the conviction of the defendant and his confinement in jail were in disregard of standards of procedure that are the very essence of justice. I readily agree that the evidence submitted on the one pseudo trial established guilt of four felonies of voluntary manslaughter. Upon separate trials, held according to due process of law, the evidence would have warranted much severer punishment. As expressed by Judge Cardozo in People v. Moran, 246 N.Y. 100, 158 N.E. 35, 37, "A criminal, however shocking his crime, is not to answer for it with the forfeiture of life or liberty till tried and convicted in conformity with law."

My dissent rests on four grounds, namely: (1) the warrants which formed the bases of the convictions were fatally defective; (2) the defendant was tried for only one offense but was adjudged guilty of five separate offenses and is serving sentences on five convictions; (3) there is no authority in law for such an officer as a trial commissioner of a quarterly court; and (4) a judgment of guilt in the absence of a verdict by a jury must be rendered by a judge who

heard the evidence in person and not through a proxy.

## I.

To start with, the so-called warrants were no warrants at all. They were not issued as authority to arrest, for Brown was arrested at the scene of the automobile disaster. They were drawn and filed as accusations only. One warrant charged that Brown "has committed the offense of KRS." That is all. Three warrants charged that he "has committed the offense of KRS 435.-025" and one, the "offense of KRS 189.-529." The other warrants followed the same form. None of them named or described any offense, which is a condition precedent to validity prescribed by § 27 of the Criminal Code. While a warrant is not tested by the same strict rules as an indictment, it must comply with the statutory requirement that it shall state a public offense and describe it sufficiently to inform the accused person of the charge against him, especially where the warrant serves as an accusation upon which a trial is had, as in this case. Here, this man is being confined in jail for committing "the offense of KRS." I do not know what that crime is. The warrants being void, the judgments thereon are likewise void. See Commonwealth for Use and Benefit of City of Paintsville v. Melvin, Ky., 256 S.W.2d 513; 22 C.J.S., Criminal Law, § 325.

## II.

There was a form of trial on *only one* of these void warrants. There were judgments of conviction of *five* offenses and five maximum penalties to be served cumulatively— a total of four years certainly and more than five years if the defendant is unable to pay the fine assessed in one of the cases. He has been in jail since November 19, 1953.

Assuming the pseudo trial was a real trial held under authority of law, it was only on the charge of negligently killing one person, and the penalty on that charge was satisfied two years ago. The record in the habeas corpus proceeding, other than the orders of the Quarterly Court showing merely the

several cases were docketed together, is the transcript of evidence in case "No. 70814" which was for the negligent homicide of Rosa Haury, as the majority opinion recites. No matter where the transcript was procured, it was agreed to be correct and was filed in the habeas corpus proceeding as being *all* the evidence heard by the trial commissioner. The fact that the defendant failed to object to the final judgments (which the majority opinion stresses) to my mind is wholly irrelevant. A defendant in a criminal case does not have to object to a judgment even where it is rendered in a proper trial. It is a novel thing for an appellate court to *assume* there was an agreement to try the five cases together simply because of silence of the record and because the accused was represented by competent counsel.

The majority opinion refers to the opinion of the trial commissioner and his statement that he would "give the defendant a year in jail" on each charge of negligent homicide and fine of $500 for drunken driving. That statement (on which the joint judgment was based) appears in the transcript of the trial of the one case, namely, that for killing Rosa Haury. The part omitted from the quotation in the majority opinion, as shown by asterisks, is: "This is the only way we can stop what has been happening in Jefferson County in the last two or three days, and particularly from the time of this accident. No matter what I give the man, it can't restore the lives of these people who have lost it by reason of his wanton negligence in driving an automobile on our highways while under the influence. One year on each case, and $500 fine for the drunken driving."

Suppose there had been five indictments pending against Brown, based upon the automobile wreck, and he had been regularly tried on one of them and it resulted in a verdict of guilty and the imposition of a penalty of one year in jail. Then, suppose the circuit judge had the clerk to enter judgments in the case tried and also four other judgments in the cases which had not been tried, and the defendant was committed to prison for the accumulating sentences of four years and 250 days. Would anyone have the temerity to contend that the four additional judgments for which there had been no trial were not void ab initio, or that the prisoner was not entitled to be relieved of the judgments by the ancient right of habeas corpus? The query answers itself. A lawyer appointed and serving "on the spur of the moment" opened not his mouth. How can it be reasonably maintained that in such a case the prisoner is estopped from ever afterward claiming the inalienable right of every citizen, high or low, and irrespective of guilt or innocence, to be tried according to due process of law? That is a fundamental principle of justice deeply rooted in the federal and state constitutions and in the traditions and consciences of our people. The court, in my opinion, ought not assume there was a waiver, as the majority indicates.

"It is as much a violation of due process to send an accused to prison following conviction on a charge on which he was never tried as it would be to convict him upon a charge that was never made." The Supreme Court of the United States so spoke in a case where an information charged the accused with violating Section 2, and possibly Section 1, of a certain Arkansas penal statute. The instructions authorized and the jury found the defendant guilty of violating Section 2 and imposed a penalty of one year in prison. On appeal, the Arkansas Supreme Court found the evidence was not sufficient to sustain a conviction under that section of the statute but was sufficient to sustain a conviction under Section 1. On a writ of certiorari the United States Supreme Court reversed the judgment and made the above statement in the course of its opinion. Cole v. State of Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644.

Only a few months ago this court held the judgment void where a man was tried on a warrant charging the selling of beer to minors and at the conclusion of the evidence the justice of the peace rendered a judg-

ment of guilty of another offense, namely, selling beer without a license, and then ordered the warrant changed to make it accuse him of that offense. This court held that even the circuit court could not entertain an appeal because the judgment was void. The reason for the decision was that the justice of the peace had no jurisdiction to enter such a judgment. Gross v. Commonwealth, Ky., 288 S.W.2d 353. How insignificant are the proceedings and the result in that case compared to those in the case at bar!!

### III.

I cannot bring myself to agree with the interpretation of the statute which authorizes the appointment of a trial commissioner of the county court that the Legislature intended to authorize the appointment of a commissioner to conduct trials in the quarterly court also. The statute does not authorize the appointment of a commissioner to assist the county judge in the performance of *all* his duties. Chapter 25 of the Statute is captioned, *"County (Probate), Quarterly and Justices' Courts."* Each of these courts is a separate constitutional tribunal. The chapter has four divisions, one is headed "General Provisions" (Sections 25.010 to 25.070, relating to all three courts); another "County Courts" (Sections 25.110 to 25.300, relating to jurisdiction, terms, etc. of the county court exclusively); another, "Quarterly Court" (Sections 25.410 to 25.510 relating to those courts); and the fourth, "Justices' Court" (Sections 25.610 to 25.750 dealing with the same subjects in such courts).

The section which authorizes a county judge to appoint a trial commissioner, KRS 25.280, is one of the sections dealing *exclusively with county courts*. The section must not be taken out of context. One provision of the statutes should normally be read in relation to its fellows. It is particularly so here where the Legislature explicitly captioned and placed it among sections dealing with the appointments of county judges pro tem and special county judges. At the same time the Legislature enacted similar provisions in those sections dealing with quarterly courts, and expressly authorized the appointment of a quarterly court judge pro tem and the selection of a quarterly court special judge. But it made no provision for a commissioner of the quarterly court. These titles and subtitles and this classification in the original bill (which was the bill enacting the Kentucky Revised Statutes) are not merely editorial or clerical insertions. The Legislature enacted the titles. The voice of the Legislature must be respected and regard be had for all this in interpreting the Act. 50 Am.Jur., Statutes, § 315.

But we need not quibble over this point, for the question of judicial power is much graver.

The Constitution in separate sections, 139 and 140, establishes the county courts and the quarterly courts as separate and independent tribunals. It merely provides that the judge of the county court shall also be the judge of the quarterly court. The Constitution, therefore, limits the two courts jointly to having *one* judge. A pro tem judge or a special judge of any court is a substitute judge to serve temporarily with all the authority of the regular judge. Such temporary judges cannot sit in judgment where the regular judge is available or qualified. Mattingly v. Commonwealth, 310 Ky. 561, 221 S.W.2d 82.

It may be well to take note of some of our previous cases which seem to be pertinent.

The trial commissioner could not be regarded as a de facto judge for there can be no de facto officer where there is no legal office or court nor where a judicial office is not recognized by the Constitution. Hildreth's Heirs v. McIntire's Devisee, 1 J.J.Mar. 206, 24 Ky. 206; 30 Am.Jur., Judges, § 100. Nor can there be a de facto judge where there is a de jure judge engaged in the actual performance of the duties of the office. 43 Am.Jur., Public Officers, § 496; 48 C.J.S., Judges, § 2. In the present case, the trial commissioner did

not believe that he was an acting judge for he knew his commission and his authority were merely that of a trial commissioner.

This court has held that a pro tem judge of the county court may not take the place of the county judge at a session of the fiscal court even in his absence because it is a separate body, even, we may add, as is the quarterly court. Jefferson County Fiscal Court v. Grauman, 281 Ky. 608, 136 S.W.2d 1102. In Martin v. Stumbo, 282 Ky. 793, 140 S.W.2d 405, (a civil case decided before the Act of 1942 authorizing the appointment of a quarterly judge pro tem) it was held that a county judge pro tem (an officer who was authorized) could not act as a quarterly court judge pro tem. But as there was a statutory authority for a special quarterly court judge, the court regarded the so-called pro tem judge as a special judge irregularly appointed or selected; hence, he was acting in good faith under color of authority and was a de facto judge, which fact saved the civil judgment from being void.

In Helton v. Commonwealth, Ky., 256 S.W.2d 14, 16, a special circuit judge who had been commissioned to try a criminal case was held to have no authority to preside at a second trial, and the judgment was reversed on that ground. The court held that a person charged with crime is entitled to be tried in a lawfully constituted court which "includes a presiding judge, duly elected or appointed according to law."

By analogy, these cases hold that a county court trial commissioner cannot act as a quarterly court trial commissioner.

## IV.

I now come to the most crucial objection to the majority decision. It is the approval of a system which, in my opinion, is subversive of the fundamental principles of the administration of justice. The decision approves a trial and condemnation of a citizen (a) by a person acting without legal, judicial authority as a judge who finds the facts, applies the law, fixes the penalty, and commits the defendant to prison, or (b) by a duly authorized court acting by proxy through such unauthorized person.

Judicial power is vested exclusively by our Constitution in the courts established by it and none other. Section 135. The Legislature may not vest judicial power elsewhere nor create judicial offices nor divide the duties of those officers. 21 C.J.S., Courts, § 122.

There can be no court without a judge. His presence to conduct the trial is essential unless temporary absence is consented to. This court, like all courts, has held a trial judge should under no circumstances absent himself from the bench without postponing the trial, for to constitute a court, there must be a judge possessed of certain qualifications; and it is not enough for the court to call a member of the bar to sit in his place. Wheeler v. Commonwealth, 120 Ky. 697, 87 S.W. 1106; May v. Commonwealth, 153 Ky. 141, 154 S.W. 1074; Mills v. Commonwealth, 240 Ky. 359, 42 S.W.2d 505. See for full consideration, Ellerbee v. State, 75 Miss. 522, 22 So. 950, 41 L.R.A. 569.

A judicial officer must exercise power in person. Litigants, especially those accused of crime, have the right to have their cases tried by a court held by a judge duly chosen to discharge judicial functions. A judge may not delegate judicial authority or the performance of judicial acts to another person, even with the consent of the parties. There can be no such thing as a deputy judge. 11 Am.Jur., Constitutional Law, § 201; 30 Am.Jur., Judges, § 31; 48 C.J.S., Judges, § 45; 16 C.J.S., Constitutional Law, § 166.

A citizen charged with crime has the constitutional right to have the judge who tries and condemns him see the witnesses face to face and hear their testimony in person. Trial by proxy is abhorrent to my conception of judicial procedure just as marriage by proxy shocks my conception of morality.

It has long been recognized that in civil cases commissioners may be appointed to assist the court by taking the evidence and submitting a transcript thereof to the judge, with a report of their opinions and recommendations as to the proper disposition of the cases. In such capacity, a commissioner does not usurp or exercise judicial power. 11 Am.Jur., Constitutional Law, § 205. What he does is always subject to exceptions. Being fully informed of the contents of the record, the court may accept or reject the recommendation of the commissioner, and the judgment is always that of the court itself upon a de novo review of the record. 21 C.J.S., Courts, § 133. In the present system neither the statute nor the appointment of the trial commissioner provides for the consideration of the record by the judge, even if it were proper in a criminal case to adjudge a man guilty upon a stenographer's transcript. Nor is there any provision for objections or exceptions to be filed by the accused person such as is provided in the practice of civil cases. No criterion for the judge is set up upon which approval or disapproval must rest. There was no action taken in these cases except the perfunctory signing of the orders of the day by the judge. I am satisfied he had no knowledge whatever of the evidence. This is proved by the fact that the transcript filed in the circuit court on the habeas corpus proceeding was obtained from a private and unofficial source.

## V.

The claim of necessity for such so-called courts because of the volume of work and the impossibility of one judge doing all of it cannot justify the system. The response to this claim is to point to the courts of justices of the peace established by the Constitution and vested by the Legislature with the same powers and jurisdiction as the county courts and the quarterly courts. There are several such justices in Jefferson County, elected by the people and paid salaries instead of receiving fees dependent upon the conviction of persons charged with criminal offenses. KRS 64.250. Hence, they are qualified to try criminal cases, and it is their duty to conduct criminal trials.

## VI.

Finally, I may take notice of the implications of waiver contained in the majority opinion.

It is the general rule, observed particularly in the federal courts, that a judgment rendered against an accused person without due process of law is void; but this court has intimated that habeas corpus does not lie merely because due process has been denied. I emphasize that these intimations must be limited to errors of practice or procedure for which there is a right of appeal, or in a few instances of little consequence. These intimations cannot apply to the absolute denial of a trial and conviction which were not according to the fundamental and constitutional processes. We have recently held that justices of the peace who receive compensation only in cases of conviction have no jurisdiction to try criminal cases and the defendant's failure to object cannot confer jurisdiction. Roberts v. Noel, Ky., 296 S.W.2d 745.

The present case concerns questions that go to the constitutional existence of a judicial tribunal, and the majority opinion approves the exercise of judicial power by proxy—not merely to the failure to observe collateral or incidental rights of the accused. The proceeding, in my opinion, was void from start to finish, hence, the appellant was entitled to have the circuit court so adjudge on the habeas corpus writ.

I close this dissent with the words of Justice Whitfield in Ellerbe v. State, 75 Miss. 522, 22 So. 950, 952, 41 L.R.A. 569, 574:

"Disregard of fundamental right in the case of the guiltiest defendant, his conviction in violation of settled constitutional and legal safeguards, intended for the protection of all, are not things which affect the particular

defendant in a given case alone, but, in their disastrous and far reaching consequences, involve, in future trials, the innocent and guilty alike, subvert justice, and disorganize society. Guilt should be punished certainly, and condignly, most assuredly; but guilt must be manifested in accordance with the law of the land. Else some day the innocent, who are sometimes called to answer at the bar of their country, may come to find themselves involved in a common ruin, deprived of the legal trial necessary to the vindication of their innocence."

I am authorized to say Judge HOGG concurs in the dissent.