## Shepherd v. McElwee et al.

May 6, 1947.

Joe L. Price, Judge.

Joseph S. Freeland for appellant.

Adrian H. Terrell and Waller, Threlkeld & Whitlow for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Paducah, a city of the second class, operates under the city manager form of government. During the latter part of January and the early part of February, 1946, a strike of the employees of the Dixie Greyhound Bus Lines was in progress. Pickets were placed in and around the bus station of the company, located at the corner of Fifth Street and Kentucky Avenue in Paducah, and trouble arose between striking and nonstriking employees. During this period Harry G. McElwee was the city manager, and the Ohio Casualty Insurance Company was surety on his official bond. Henry Collins was the city treasurer, and the United States Fidelity & Guaranty Company was his surety. On or about February 1, 1946, McElwee, as city manager, appointed eight persons as special policemen at a salary of $7 a day. None of them served later than February 13, 1946. After their services ended, they were paid the total sum of $511 from the city's general fund. On March 13, 1946, Charlie Shepherd, suing as a citizen and taxpayer of the City of Paducah, brought an action against the city manager and the city treasurer and their sureties to recover for the use and benefit of the city, the sum of $511. He alleged in his petition that there was no law of the State of Kentucky or ordinance of the City of Paducah creating the office or employment of special policemen, and that the payment of the $511 from the public funds of the city was unlawful and a breach of the covenants of the defendants' bonds. He also alleged that he had made demand on the city through the proper officers to institute suit against the defendants to recover the money paid to the special policemen, but all of those officers had failed and refused to do so. The defendants demurred to the petition and, without waiving the demurrer, filed an answer. In the second paragraph of the answer it was alleged that because of

disorders and lawlessness which occurred during the strike an emergency existed; that there was insufficient time within which to secure the enactment of an ordinance authorizing the appointment of additional policemen; that by reason of the riotous assemblage of persons involved in the strike and disorderly conduct, the continuous fighting between them, and the obstruction of the streets by participants, there existed a state of lawlessness which endangered the lives of citizens and threatened the peace and good order of the community. It was further alleged that the personnel of the regular police force of the city was not of sufficient size to cope with the threat of a riot and the law violations which were taking place, and that by reason of these facts the city manager was within his authority in appointing the special policemen. It was alleged in paragraph 3 of the answer that the mayor and members of the board of commissioners informally agreed to the appointment of the special policemen, and thereafter on March 19, 1946, the board of commissioners, at a regular meeting, passed a resolution approving the action of the city manager, and at a regular meeting of the board of commissioners on April 9, 1946, an ordinance was adopted ratifying and confirming the appointment of the eight special policemen by the city manager and approving the payment of their salaries in the sum of $511. The plaintiff filed a general demurrer to the answer, and the demurrer was overruled. The defendants' demurrer to the petition was sustained, the plaintiff declined to plead further, and his petition was dismissed. It is contended on this appeal that the Legislature has not granted to cities of the second class, either expressly or by necessary implication, the power to appoint special policemen, and the emergency alleged in the answer did not authorize their appointment.

Subsection (1) of section 84.150 of the Kentucky Revised Statutes enumerates some of the legislative powers granted to cities of the second class. Subsection (2) of section 84.150 provides: "The general council may pass, and enforce by fines and penalties, all such ordinances, not inconsistent with the law. as are expedient in maintaining the peace, good government, health and welfare of the city and its trade, commerce and manufactures. The enumeration contained in this chap-

ter of municipal powers shall not be construed as a limitation upon this general power.''

The power conferred by this subsection is not limited in respect to the right of the legislative body to take such action as may be necessary to insure the peace, good government and welfare of the city. It is as broad as the police power of the state. Silva v. City of Newport, 150 Ky. 781, 150 S. W. 1024, 42 L. R. A., N. S., 1060, Ann. Cas. 1914D, 613. Speaking of subsections 23 and 25 of section 3058 of the Kentucky Statutes, now section 84.010, subsection (2), and section 84.150, subsection (2), respectively, of the Kentucky Revised Statutes, this court said in Stone v. City of Paducah, 120 Ky. 322, 86 S. W. 531, 533: ''These provisions, construed together, show that it was the intention of the General Assembly to grant to the council of cities of the second class full and complete power to enact any and all ordinances and fix fines and penalties to maintain the peace, good government, and welfare of the city; * * *.''

In Commonwealth v. Kroger, 276 Ky. 20, 122 S. W. 2d 1006, 1008, the validity of a traffic ordinance of the City of Newport, a city of the second class, was assailed because it changed the rules of evidence in certain respects. This court, in upholding the ordinance said: ''* * * we are convinced that present charters of second class cities confer by necessary implication upon the legislative body of that class of municipalities authority to so enact. Section 3058-25 of our Statutes, being a part of the charter, confers authority: 'To pass all such ordinances, not inconsistent with the provisions of this act or the laws of the state, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fines and penalties; and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power.' We know of no constitutional or statutory provision with which such an enactment is inconsistent, and it has a direct tendency towards the ready enforcement of penal ordinances in order to maintain 'the peace, good government, health and welfare of the city' to the same extent as it would be necessary for the enforcement of a state statute upon the same or other subjects.''

Under the general power conferred upon cities of the second class by subsection (2) of KRS 84.150, there can be no doubt that the board of commissioners of the City of Paducah was authorized to provide for the appointment of special policemen in cases of emergency. It is made the duty of such cities to provide for the maintenance of peace within their borders and the protection of the lives of their citizens. The Legislature specifically provided that there should be no limitation on their power in this respect. KRS 89.570 provides that the city manager shall be the executive agent of the mayor and board of commissioners in the management of the city's affairs and shall make all appointments. We think that in view of the situation which had developed in Paducah as described in the pleadings, the appellee McElwee acted within the authority conferred upon him by law, but it is unnecessary to discuss this phase of the case since the board of commissioners, by an ordinance duly enacted, ratified and affirmed his acts. As heretofore pointed out, the board of commissioners had the power in the first instance to authorize the appointment of the special policemen. It follows that the board's ratification of the employment of the special policemen by the city manager was not ultra vires. Its ratification of the employment was as much an act of the city as if the employment had been authorized by an ordinance previously enacted. Citizens National Bank's Trustee v. Town of Loyall, 262 Ky. 39, 88 S. W. 2d 952; Masonic Widows & Orphans Home v. City of Corbin, 229 Ky. 375, 17 S. W. 2d 215; Massey v. City of Bowling Green, 206 Ky. 692, 268 S. W. 348. This is the general rule applicable to the governing bodies of cities and counties. The fiscal court of a county is a body of limited powers, and can bind the county only in the manner and for the matters expressly allowed by statute, but it has been held in numerous cases that a county fiscal court may ratify any contract which it could have made in the first instance. Estill County v. Noland, 295 Ky. 753, 175 S. W. 2d 341; Lawrence County v. Stewart, 287 Ky. 827, 155 S. W. 2d 446. The answer in the present case stated a good defense, and the court correctly overruled the demurrer thereto.

Judgment affirmed.