Richard HALL, D/B/A Hall Trucking
Company, et al., Appellants,

v.

COMMONWEALTH of Kentucky ex rel.
Jo M. FERGUSON, Attorney
General, Appellee.

Richard HALL, D/B/A C & C Trucking
Company, et al., Appellants,

v.

COMMONWEALTH of Kentucky ex rel.
Jo M. FERGUSON, Attorney
General, Appellee.

COMMONWEALTH of Kentucky ex rel.
Jo M. FERGUSON, Attorney
General, Appellant,

v.

Ward J. OATES et al., Appellees.

COMMONWEALTH of Kentucky ex rel.
Jo M. FERGUSON, Attorney
General, Appellant,

v.

J. B. WELLS, Jr., et al., Appellees.

Court of Appeals of Kentucky.

Oct. 2, 1959.

Rehearing Denied Feb. 12, 1960.

John Y. Brown, William H. McCann, Lexington, for appellants, Richard Hall, individually, Richard Hall, D/B/A Hall Trucking Co., and Richard Hall, D/B/A C & C Trucking Co.

Jo M. Ferguson, Atty. Gen., Seth T. Boaz, Jr., Asst. Atty. Gen., for Commonwealth ex rel. Jo M. Ferguson, Atty. Gen.

Smith, Reed & Leary, Clifford E. Smith, Paul E. Hunley, Frankfort, for appellees. Ward J. Oates, James W. Martin, Aetna Casualty & Surety Co. and American Employers Ins. Co.

J. D. Buckman, Jr., Frankfort, for appellees J. B. Wells, Jr., and American Surety Co.

STEWART, Judge.

. These four appeals result from two actions which were consolidated for trial in the Franklin Circuit Court. In one case. the Commonwealth sought to recover the sum of $51,480 from Richard Hall, individually and d/b/a Hall Trucking Company, and J. B. Wells, Jr., the then acting Commissioner of Rural Highways of the Kentucky Department of Highways, Ward J. Oates, the then acting Deputy Commissioner of Finance, and James W. Martin, the then acting Commissioner of Finance. In the other case, the Commonwealth sought to recover from Hall, d/b/a C & C Trucking Company, and Wells, Oates and Martin, the sum of $15,480. Both of these sums were alleged to have been paid or caused to have been paid illegally to Hall by Wells, Oates and Martin as representatives of the Commonwealth. The sureties on the official bonds of Wells, Oates and Martin were also made parties defendant. Hall, by appropriate pleadings, claimed he is entitled to the monies paid him, and that the Commonwealth also owes him approximately $21,143 for work performed for which he has not been compensated. We shall herein refer to Hall and his companies as "the Hall companies".

At the conclusion of a hearing held before a special commissioner appointed by the lower court, the latter recommended that all of the above named parties defendant be held liable for the refund of the sums paid. The circuit court entered judgment for the Commonwealth in the amounts set forth above against the Hall companies, but dismissed the actions as to Wells, Oates and Martin and their sureties on their official bonds. The latter officials, pursuant to the prayer of the amended complaints, were also enjoined from processing and making future payments of state funds to the Hall companies. The latter are appealing from the judgment entered against them, and the Commonwealth is appealing from that portion of the judgment which dismissed the complaint, as amended, as to Wells, Oates and Martin and their sureties on their official bonds.

The facts, though in some dispute, seem to be substantially as follows:

In March, 1957, Hall, in the company of the Knott County Judge, Dennis Sturgill, signed certain papers in blank at the Department of Highways' district office in Pikeville. These papers were supposedly written proposals on standard forms used by the Department of Highways in making contracts for the rental of road equipment. Hall asserts that O. J. West, the district engineer of the Department of Highways attached to the Pikeville office, was present at the time he affixed his signatures to the forms, but this is denied by West. Thereafter, in March, 1957, construction began on thirteen rural secondary road projects in Knott County and the Hall companies started their operations. Hall admits that he did not receive a formal acceptance of his proposals before the work commenced but contends he understood the proposals executed by him would be accepted in due course by the Department of Highways.

There is considerable disagreement as to the role played by the Hall companies in these road projects. Hall (and the appellees other than the Commonwealth) contends his companies merely furnished the equipment, together with the machine operators, and that the Department of Highways directed the work and had already cleared the rights-of-way and hired all employees on the projects except the machine operators who were furnished by Hall. The county maintenance foreman, C. B. Thornsberry, and Buddy Calhoun, who succeeded Thornsberry, and the subforeman, Bill Dyer, testified that the work was done by and under the supervision of the Department of Highways, with Dyer in direct charge of the projects, and that

daily time records were transmitted to the district office of the Department of Highways in Pikeville. The Commonwealth, on the other hand, contends that the bulk of the work was performed without any authorized supervision by the Department of Highways and was done by Hall using his private employees. West testified that he had no knowledge of the road work until May 20th when the time sheets were first submitted to him for payment.

On June 11, 1957, the Division of Rural Highways, through Wells, undertook to accept or ratify the forms theretofore signed by Hall, and each of the roads was assigned a rural secondary force account project number. Thereafter, contracts with the Hall companies were executed, which provided for the hourly rates to be paid for equipment and operators furnished. This was later approved by the Department of Finance, and Hall was paid a total of $66,960 for rental of his equipment; $51,480 to the Hall Trucking Company, and $15,480 to the C & C Trucking Company.

In August, 1957, at the instigation of the Treasurer of Kentucky, Henry Carter, the Department of Finance investigated the contracts in question, with the result that the hourly rates on certain items of equipment were determined to be excessive and, upon agreement of the parties, these were subsequently reduced. The reduction was made retroactive and deductions were made from current invoices. When the Attorney General indicated that he was about to file suits to test the validity of the equipment rental contracts, the Commissioner of Finance agreed to withhold further payments to the Hall companies, and construction on the road projects came to a halt in August or September of 1957.

It was the contention of the Commonwealth below, which the trial judge upheld and which contention is renewed here, that the contracts with the Hall companies were void because the Department of Highways failed to advertise for bids for the construction or reconstruction of the rural secondary roads mentioned above, pursuant to KRS 176.070(1), which reads:

"After surveys, plans, specifications and estimates have been completed for any road or section thereof, and the type and character of the road has been determined, and the right of way obtained, the department shall advertise for at least three consecutive days in newspapers, either in or out of the state, twenty days before the letting of any bids, for bids on the work, and may contract for the purchase of all materials necessary for the construction and maintenance of roads."

■ There was admittedly no competitive bidding in conformity with the quoted statutory provision. Appellants, the Hall companies, argue that such a step is not required by the language of the law applicable to the use of gasoline tax revenue set aside for the construction, reconstruction and maintenance of rural secondary roads. They point out that the gasoline tax revenue designated to be devoted to rural secondary roads "shall be expended for said purposes by the Department of Highways * * * according to the terms and conditions prescribed in KRS 177.330 through 177.380;" and they emphasize that KRS 177.350 fully vests the Department of Highways with power at any time to *employ such personnel and obtain such equipment as may be necessary for the establishment and maintenance* of an integrated system of secondary and rural roads in the Commonwealth of Kentucky." *They rely upon the fact* that in employing personnel and obtaining equipment in rural secondary road work no requirement to secure bids therefor is set forth in KRS 177.330 through 177.380. They further contend, in this connection, that these statutes wholly govern all measures to be taken in building rural secondary roads.

The Commonwealth insists that rural secondary roads are as much a part of the Kentucky highway system as the primary roads of the state are and that, in conse-

quence thereof, the Department of Highways must seek bids for work to be performed on such roads and if it does not it is proceeding contrary to a direct mandate of the Legislature. The ultimate argument of the Commonwealth was in circuit court and is before us that the failure to receive bids before deals were made with the Hall companies rendered the contracts with the latter void ab initio. The lower court accepted this view.

It is the opinion of this Court, however, that it is unnecessary to determine whether the statutes establishing rural secondary roads, and outlining the procedures in such a program, referred to above, require competitive bidding under KRS 176.070(1). We have concluded the contracts entered into by the Department of Highways with the Hall companies were for the rental of equipment for use in the construction of roads by the Department and not for the construction of roads by the Hall companies. The facts in this case are much in controversy and cannot be satisfactorily resolved by reading the evidence, but, assuming that West, the highway district engineer, was unaware for a period of time of the work begun on the Knott County projects, nevertheless the testimony as a whole indicates rather conclusively that the construction of the roads under discussion was under the supervision of foremen of the Department of Highways and that personnel of that Department were employed on these projects. It is true that the Hall companies supplied the persons to service and operate the equipment, which consisted mainly of light tractors and bull dozers, but this seems not unusual. We believe the evidence fails to show that the contracts with the Hall companies should be denominated road construction contracts. They were, properly speaking, merely contracts for the rental of equipment or machinery.

Although KRS 176.070(1) makes it necessary to advertise for bids on road work and empowers the Department of Highways to "contract for the purchase of all materials necessary for the construction and maintenance of roads," there is no statute requiring the Department to advertise for bids or to award contracts on the basis of competitive bids for the rental of equipment, with or without operators. The statutes in KRS Chapter 176 having to do with competitive bidding and allowing "force account" work by the Department of Highways, where no satisfactory bid is received (KRS 176.120), refer to the *construction* of public roads and not to the mere rental of equipment for road construction purposes. The fact that no bids were solicited for construction of the roads in question before the state proceeded to perform the work by "force account," even if such was required, should not invalidate the equipment rental contracts let to the Hall companies under the circumstances.

It is apparent from the record that a considerable portion of the contracts undertaken by the Hall companies had been performed in advance of any authorization by the Department of Highways. Without intending to tacitly approve or condone the irregular manner in which the Department permitted the work by the Hall companies to be initiated, it is our opinion the Department had the power to complete and ratify the rental contracts, which it did on July 11, 1957. The Department utilized and supervised the operation of the equipment from the time it was put in use in May of 1957, some time before the contracts were executed. Later, when the contracts were accepted and formalized, the Department of Finance fully compensated the Hall companies for the money due them up to that date. We believe these payments were legal under the doctrine of ratification.

In Knott County Board of Education v. Martin, 256 Ky. 515, 76 S.W.2d 601, 602, 603, lumber and nails were furnished by a materialman under an oral contract with the Knott County Board of Education for the erection of a school building. This contract contravened the provisions of Section 4399-a-10 of the Kentucky Statutes then in force, which made any contract with

any county board of education invalid if it lacked approval in writing by the county superintendent of schools. For this reason, the materialman's claim was denied by a decision of this Court, reversing the lower court's allowance of the claim. However, the opinion in that case clearly stated that the debt sued on could have been collected, if it had been ratified in the manner required by law. This was said on that point:

"It is an established rule that, although a contract ostensibly made by a board of education may have been illegally entered into, still, if it were one it was authorized to make, it may ratify such contract, provided the ratification is made and done in the manner and form required by the statute in the making of such contract."

In Estill County v. Wallace, 219 Ky. 174, 292 S.W. 816, 817, it was stated that since the fiscal court had the authority to employ a certain person in the first instance, "it had the power, even though his employment was informal, to ratify the contract. This it did by availing itself of his services and paying therefor. In the circumstances, the county cannot recover the sum so paid."

See also Shepherd v. McElwee, 304 Ky. 695, 202 S.W.2d 166; and Oberwarth v. McCreary County Board of Education, 275 Ky. 319, 121 S.W.2d 716.

In this case, the contracts were informal when work was commenced but were subsequently accepted, and since the Commonwealth had the authority to make the contracts, in the first instance, this served as a complete and sufficient basis for ratification. There appears to be no evidence in the record which would indicate that since the reduction of hourly rates on certain items of equipment the state has not received value for the money already expended and that now owed. It follows that the lower court erroneously ruled that the contracts with the Hall companies were void.

Wherefore, the judgment is reversed as to Richard Hall, individually, and Richard Hall, d/b/a Hall Trucking Company and Richard Hall, d/b/a C & C Trucking Company, with directions that all monies heretofore paid unto Hall or the Hall companies be permanently retained by him or them, as the case may be, and with further directions that the balance now due him and his companies for work performed be compensated by the Commonwealth.

It is further ordered that the permanent injunction granted by the trial court, enjoining the payments to Hall and his companies in accordance with the preceding paragraph be dissolved and deleted upon the entry of a new judgment in this action.

The judgment is affirmed as to that part entered in this action on September 25, 1958, which dismissed the Commonwealth's complaints, as amended, as to James W. Martin, individually and as Commissioner of the Department of Highways and former Commissioner of Finance; Ward J. Oates, individually and as Commissioner of Finance and former Deputy Commissioner of Finance; J. B. Wells, Jr., individually and as Commissioner of Rural Highways; and as to the respective sureties on the official bond of each of these officials, as shown in the record of this case.

EBLEN, J., concurring.

MONTGOMERY, C. J., and PALMORE, J., dissenting.

WILLIAMS, J., not sitting.

EBLEN, Judge (concurring).

I concur in the result. In my opinion, whether a contract for rental of equipment must be submitted to bids depends upon the status of the highway project on which the equipment is to be used. Accordingly, if the projects in question were required to be let under competitive bidding, as provided

in appropriate legislation, the rental of equipment to be used on those projects, also, would be subject to competitive bidding. Otherwise, the provision of the law which requires contracts for construction to be let only after bidding thereon, as well as the limitations upon the doing of "force account" work, could be circumvented and rendered ineffective.

Thus, it is my view that it is essential to determination of the issues in these cases to decide if contracts for construction of rural roads under KRS 177.320 through 177.380 are subject to the bid mandate of KRS 176.070(1). I think not. The question is the old one of legislative intent, and where that is plainly manifest from the language used in the enactment, this Court is without authority to add or detract therefrom. Department of Revenue v. McIlvain, 302 Ky. 558, 195 S.W.2d 63; Reynolds Metal Co. v. Glass, 302 Ky. 622, 195 S.W.2d 280. Chapter 46 of the Acts of 1948 (now codified as KRS 177.320 through 177.380) is a separate, complete and unambiguous legislative enactment authorizing the very acts and expenditures made in these cases. It was enacted later in time than KRS 176.070(1) and makes no reference to the latter, either expressly or by implication. Rather than state that the expenditures it authorizes shall be made in accordance with existing laws relating to highways, it expressly excludes such an implication by providing that the revenue for this purpose "shall be expended * * * according to the terms and conditions prescribed in KRS 177.330 through 177.380." So long as that expenditure is made in accordance with the provisions of KRS 177.-320 through 177.380, the governing law has been followed, whether the contract providing for the work has been negotiated with or without bids. To hold that the expenditure is valid only if the contract has been submitted to the bidding provision of KRS 176.070(1) is the imposition of an additional term or condition in direct violation of the legislative intent as gathered from the language of KRS 177.320.

I know of no accepted canon of judicial construction which will authorize or justify rewording this phrase so that it will read "* * * according to the terms and conditions prescribed in KRS 177.320 through 177.380 and 176.070(1)." If the General Assembly had so intended it could easily have stated the same. The mere fact that the Department may have submitted most of the rural secondary projects to bids is of no significance. Contemporaneous construction is material only if there is ambiguity. McNally v. Grauman, 255 Ky. 201, 73 S.W. 2d 28.

I state my views so that the matter may be given consideration by the General Assembly.